Good morning. May it please the court. I'm David Dean, with Jameson Hoffman, appearing for Defendant's Appellants, Alex Popescu, Jonathan Rosenblum, and Working Washington. I'd like to reserve five minutes for rebuttal. This case is really hard to figure out because it's so novel. Basically, you've got parties who aren't unions. So I guess it's kind of like advocacy groups. I mean, it would be conceptually the same. Well, the Teamsters is a union, but it doesn't represent these people. And it was dismissed from the case below. And the other group, I keep forgetting the name. Working Washington. Working Washington. If it were an environmental group saying, we want the airport to shut down because all these airplanes cause carbon emissions and generate global warming, it would be the same thing, as far as I can tell, because the workers have never employed Working Washington as their bargaining agent. Agreed, Your Honor. Why shouldn't this be conceptualized as a representation dispute? Because there is no organization that is seeking to be a representative of these workers, and these workers have authorized no representative to act for them. But nevertheless, Working Washington is purporting to act on behalf of Popescu and the employees. Not in any capacity with relation to dealing with their employer on collective bargaining issues or attempting to bargain on their behalf. This is a group of employees. It looks like Working Washington is seeking the good without the bad. The bad of representation is you would have to mediate, and you could mediate. And the good is that you could organize a strike to get some leverage. And you're trying to get the good, which is the ability to organize a strike, without the bad, which is being subject to a union representation election and mediation. There's obviously a tremendous amount of good things about union representation, which these employees, Alex Popescu and his colleagues in the 100 John Doe's, lack. Those employees are attempting to deal with a situation that- If you had a union, Popescu would have to, it would be a minor dispute, and you would not be allowed to strike, and it would have to be resolved within the collective bargaining agreement framework. And Working Washington, where the union representing these employees, would have to mediate. There are a lot of assumptions there, Your Honor. Important question, I think, and so I'd appreciate you answering it, because you're really suggesting the RLA does not apply. But you never say any place in here that we don't have a carrier, or that we wouldn't be subject to it if we were a union. And so therefore, his is a very important question. Your Honor, we're not saying that the Railway Labor Act does not apply. This is a carrier. These are employees. Do you concede that point? That was what affects all of us. I gather that your side concedes that your people, I'll say collectively, are employees under the definition of the RLA. Is that correct? Yes. Okay. And that this, and that this- We call it a derivative carrier, Your Honor. Aircraft Service International is a carrier. It's referred to under the act as a derivative carrier because it's doing work traditionally done by regular airline employees, and in its particular case, it is controlled by carriers. There are actually a number of these contractors in this new world of outsourcing. Some of them are covered by the NLRA because they don't have sufficient carrier control over their personnel. Some of them are covered by the RLA. If this were covered by the NLRA, this particular carrier, it would be clear that these employees would have a right to strike. It's clear under the RLA that they have a right to strike because, or I should say, let me back up a minute, it's very, very clear that the district court has absolutely no jurisdiction to enjoin such a strike. Well, I understand where you're going, but it seems to me that the district court was on the same precipice that we are right here. If I read 101, and I know what happened in 101, having gone through this a little bit in my life, then there would be no way for the district court to get involved. But the RLA is an exception. The standard that's been articulated in this circuit by the Burlington Northern Embank ruling in 2000 was essentially that the RLA creates an exception if it provides a procedure for resolution of the dispute. Okay, I'm sorry I didn't add that extra, but it seems to be an exception if, but it has the ifs, and then we have to determine if this is one of the ifs, right? Whether there is, in fact, an administrative procedure, as the lower court held, that is some sort of catch-all procedure that is administered by the National Mediation Board that is meant to deal with disputes like Mr. Popik's dispute over his retaliatory suspension, his safety concerns, the issues that those employees were concerned with and beginning to take concerted activity about, as they had a right to do under both Washington law and as is protected by the NLGA. And as I understand it, then you're not disputing this is a labor dispute? It is a labor dispute, absolutely. It has its matrix in the employer-employee. Okay. Well, given that fact, then help me with this. You can appreciate the fact that Article III judges learn all the time because we're not all specialists in these areas. I went back and read this Act from 26 when the term employee was defined. I went back and read the 34, which you had the carrier, in that case the railroad, and the labor unions came in, and independently of any little individual laborers came up with this system that basically contemplated labor unions and carriers. And they don't necessarily correlate. You've got in the third prong of the kind of disputes there are some things that may have to be done, and I'd be interested to know what it is if the RLA applies and you apply R2000 on bond case, what conditions precedent do your parties have to go through before you have a right to strike under the RLA? I noticed you went to the mediation board. They said they can't do anything. So you've obviously tried one thing. What other things do you need to do, if anything, to have a right to strike under the RLA? Well, again, I think the issue here, if I may, is whether or not the lower court had jurisdiction to enjoin this. But understand, the North LaGuardia Act, at least according to the Supreme Court, is the general law. And if you have a more specific law like the RLA, that takes precedent, if you're more familiar with that than I am. So you've indicated here that your folks are employees under the RLA. Sounds like you agree they're covered by the RLA. So what we're trying to explore is obviously there are parts of the RLA that simply don't work with you because you're not a labor union. What I'm trying to find out is what does work. I think you'll not get very far with us to just have a blanket statement that the North LaGuardia Act says the district court has no jurisdiction. We may get there, but we need to first of all find out why the RLA doesn't apply, or if it applies, have you already done all you need to before you have a right to strike? I think these employees have done everything they need to, but I believe that the RLA does not prescribe any particular procedures that apply to these non-union employees who are not seeking to be represented. Okay, so you're saying that notwithstanding you went to the National Mediation Board, you just did that gratuitously, basically. You didn't feel like you were complying with any aspect of the RLA? We went to the National Mediation Board after we were enjoined to demonstrate to the district court that, in fact, there are no administrative procedures that applied. We asked that he hold the record open. He chose not to do that, but we have submitted the results of our efforts as supplemental authority, to the extent the Mediation Board takes, obviously, exactly the position. Okay, so you did that because you felt that in order to satisfy the district court, you needed to show that, right? We wanted to demonstrate to the district court that the agency that applies this statute agreed with us that there is no catch-all administrative procedure for unorganized employees. And is it your view that there is no other body, no other procedure that you can be required to take before you have a right to strike under the RLA? Exactly. I think it's the same as with the NLRA. That is, these employees, and if I can take one step back, because just to address this legislative history point, I do think that's very important. In 1926, what you had was organized labor and the organized carriers who came together. And because of the threats of strikes and strikes in the rail industry, they essentially wrote a piece of legislation that was a compromise between them, in which organized labor laid down, in narrow circumstances, their right to strike, their economic weapons. In return, carriers also subjected themselves to limitations. In 1926, it was the major dispute limitations that had to do with the status quo, where the carriers agreed that during this entire negotiation mediation process, they would not be able to change the objective working conditions, which was obviously a tremendous concession. In 1934, because they had not made the adjustment board or minor dispute process mandatory, there had been, in fact, a lack of cooperation between the two parties in actually forming adjustment boards. And so they came back and they made the adjustment board process binding, they made it final, and they gave either party, that is, organized labor or collective representatives and carriers the right to invoke that process. In return for that, again, labor laid down its weapon and said, we will not strike during minor disputes. And you haven't said anything that I disagree with based upon my reading on this point, the historical point. But what I'm struck with is this, though. One of the reasons why the 34 Act was passed was, of course, Norris LaGuardia was designed to end the government by injunction where labor unions were being joined all over the place. And horrendous uproar. Then you get the Railroad Labor Act. Then you clear it up in 34. People in Congress even said, you know, we're not talking about the individuals here. And yet the definition of employee was not changed. And you get this policy statement that makes it pretty clear, I think, that Congress was very concerned about people being able to strike in a way that affected carriers, which go to the lifeblood of the economy. So it almost seems like we have one of these, and unfortunately we have to deal with these all the time, where the right hand in Congress and the left hand in Congress don't meet. And you've got a statute that dealt with one situation and another situation, and there's a hole there. I do believe that there is a gap in the sense of there are no administrative procedures for unorganized business. Okay. So then the question is, what do we do? Your employees under the RLA, arguably an exception to the Norris LaGuardia Act. The public policy says that people ought not to be able to strike willy-nilly. And as the district court pointed out, you get the, in quotes, absurd result, his words, not mine, where you have people who are unrepresented by a labor union who actually have more rights than the labor unions do. Right. I totally disagree with that. Okay. Tell me why that's wrong. By the district court. And I think it fundamentally misconceives the reality of the economic contest that, in fact, is incorporated into the act and made part of what makes the act work. The act is meant to drive these parties to compromise so that they resolve their disputes. And for that reason, in the Burlington Northern Supreme Court case, they allowed much broader rights to disrupt the economy than under the NLRA. They have a full right of secondary. Okay. So similarly, I want you to answer his question. He is the presiding judge, and I don't want to interrupt him. My time is definitely running down. I understand. But I think that it's very important to recognize that unrepresented workers have none of the protections or incentives that organized workers have to move into this kind of a dispute with their employer. In fact, that is to say, they come out, they have no way of creating an agreement that will embody any gains that they make through striking. They have no way of negotiating. I'm wondering if there even is such a thing as a strike by unrepresented workers, as opposed to individuals deciding not to come to work every day. But if that's so, I wonder if the district judge can't enjoin third parties, who do not represent the workers, from trying to pressure them or encourage them not to come to work, because the district court is not enjoining any concerted action by workers. It's just enjoining third parties from trying to get workers to violate their contracts. I think, well, these workers would not be violating any contract. But the NLGA applies to people participating in the labor dispute. They wouldn't be violating a collective bargaining agreement because there is none. Correct. I think they do have a contract that they shall work and the employer shall pay them. I gather in response to his question that you say, okay, even if they're covered by the RLA, the RLA doesn't cover this situation. Therefore, Norris LaGuardia applies. The district court has no jurisdiction to issue an injunction. The RLA has no procedure for final decision, no procedure to resolve this dispute. It clearly covers these employees. In this circuit, for example, Sections 2-3rd and 2-4th clearly protect these employees, should they ever become interested in actually organizing a union, from being retaliated against for that, or arguably for trying to organize themselves at all. And, in fact, this circuit in the Burke case, which is not cited in the papers, but Burke v. Mexicana, you found because of the lack of any procedures for an unrepresented employee under the Act, he would have standing to be able to bring a claim in federal court as a private cause of action. Let me, I'm going to interrupt just a minute. Ask something and then you ask something. I'm going to interrupt just a minute. I mean, you're here on a preliminary injunction. Yes. We had a case down there. We've now got a preliminary injunction. The standard review for a preliminary injunction has four prongs. Likelihood of success, which the district court, he mentioned every one of them. Irreparable harm, public interest, and balance of equities. And he went through it. And it's really in front of me now, abuse of discretion, because this is a preliminary injunction that he has put together. And now I have to say there's somehow he did something wrong. Now, we've argued all morning thus far about likelihood of success, because some say you've got no likelihood of success. The RLA applies. You should be in there trying to get a representative and go on about your business. Another guy would say, no, we're not covered. We get a different approach than anybody else. And this district judge did his best to go through there and come to some result. I don't know for sure. So then I go to the second prong, irreparable harm. There's no question this would be irreparable harm at CTAG. No question. So the district court comes out in the same vote. He says, well, you know, it seems like irreparable harm. Let's get to the end of this law case before we do something with it. The next thing he goes to is balance of equities. And I saw what he did. I read it. I couldn't see that it was that out of line, abuse of discretion. And now I'm at the public interest, certainly public interest to keep CTAG going. We're here for a preliminary injunction. Why is it that I should undo this preliminary injunction on abuse of discretion standard? Because there is a threshold jurisdictional issue that is not subject to the abuse of discretion standard. This court, the lower court, could not act under the Norris LaGuardia Act unless it needed to be accommodated to the Railway Labor Act administrative procedures that these employees were subject to. And I think it's virtually unremitted in your appeal papers that there is no such procedure. Thank you. Do you have any other questions? No. We'll let you go over. We'll hear from the other side. We may give you a little rebuttal time. But these are very interesting and troubling issues. So let's hear from the other folks, okay? I'm glad you find them interesting. I'm not sure I'm glad you find them troubling. My name is Douglas Hall on behalf of the plaintiff below. I think your questions have sort of gone to the nub of the matter, which is the defendant's position in this case is that unrepresented employees have the right to strike at any time, for any reason, without limitation, without having to do any procedures before doing so. Surprise strike. I don't know if the word strike applies where they're not represented by a union. Individuals certainly can choose not to come to work ever since the 13th Amendment. Even under the NLRA where this action would be permitted, it is known as a strike when unrepresented, if they're banding together collectively. I agree with you that if individual employees on their own chose not to come to work in protest of how they felt they were being treated, that would be one thing. But when you band together collectively in an action, it is a strike. And that's what it was called throughout the papers, I'm sorry, throughout the proceedings below leading up to the threatened strike. That's what Norris LaGuardia says as well? Well, Norris LaGuardia took the labor dispute. I don't know that it necessarily. But what authority? I understand that within your appeal, that's what you called it. But is there any authority that you have for the concept that when unrepresented people band together and don't come to work, that that is called a strike? Well, it's called collective action. I don't know that I have any specific citation. I can just tell you from experience in dealing with labor law, both under the RLA and the NLRA, it is referred to as collective action. It's really called collective action. Sure. And, well, I could say the Wheeling case referred to it as a strike when those individual employees threatened to go out in the context of a representation dispute. One other thing I'd like to touch on that was the subject of one of the early questions is the fact that this is not a union. Could you tell us how to read the words in the Railway Labor Act so that they fit these circumstances? I'm sure we all have it right in front of us. Sure. Just tell us. Well, Section 2, first of all, you have the overarching purpose of the statute. I don't have any trouble with the purpose. Okay. It's obvious that the purpose is meant to prevent employees from shutting down an airport over a labor dispute. Absolutely. What I have a problem with is how to read the specifics so that it applies here and creates an exception to the Norris-Iguati Act. Well, what you get to is you have Section 2, first, which. . . I have the U.S. Code numbering. I'm sorry, 45 U.S.C. 152, first. Okay. It is a very unusually numbered statute. That's one of the tests for getting into the Railway Labor Act bars. You have to be able to. . . Yeah, I know. You have to use the Act numbers instead of the U.S. Code numbers. I'm sorry. I'm used to calling it 2, first, Your Honor. I'm sorry about that. Then you also have Section 2, ninth. And what's unique about this statute and there is legislative history to this effect that was cited in the Chicago River case, among others, is that when they drafted this statute they felt there was more danger in writing specific provisions. . . You know perfectly well that there have been disputes about the use of legislative history. Sure. For a long time. My own view in this case is the lobbyists for the unions and the lobbyists for the carriers each got some language that they liked in the legislative history, maybe because they couldn't get it into the statute. I really don't think it has much force. So I'd appreciate you focusing on the words of the statute. Sure. I'd agree with you on the 1934 Act, by the way, Your Honor. But in the 1926 Act it's well accepted that because this was a joint production that the statements of Donald Richburg, who I was quoting, do reflect the legislative history of both parties. That's a fair comment. Good point. But still. . . The point they did. . . Tell me how the words of the Act. . . Section 2-9 is the second section I was starting to refer you to. Which one? Section 152-9. 152-9, okay. Which has to do with the certification process. Better right here. And the representation dispute. So what the Supreme Court has held in cases like Chicago River and Louisville and Nashville is that even though there's not specific things. For example, the Chicago River case, Your Honor, that had to do with whether or not the unions could strike in support of a minor dispute. They said they could. There were 21 disputes that had piled up. They were upset with the way they were being handled. Those are supposed to go to arbitration on the rail side before the National Railroad Arbitration Adjustment Board. Rather than do that, they said we want to strike. And there's nothing in the law that says we can't. Which words of 152-9 should I be looking at to show that this fits? Well, what you should be looking at, Your Honor, is the actually it's been interpreted by decisions that this is the exclusive means for representation. And if you look at the cases. . . I see where 152-9 says that there's a dispute about who represents the employees. It goes to the Mediation Board. But I'm having trouble seeing where there's a dispute as to who represents the employees here or whether the Mediation Board has authority. Well, it goes on to say that the carrier has the obligation to deal with a representative so certified. And that's our point. We only have a legal obligation to deal with a certified representative. Someone else can come to us and say we want to talk to you about the terms and working conditions like happened here. And this was going to the point I started to make earlier, which is you don't have to be a labor organization to be a representative for our purposes. You can be a working Washington. I don't know about that. That I have a lot of trouble with. I mean, in order for working Washington to be an agent, it's kind of like, well, if I bought something at a store and some consumer advocacy group decides that store is ripping off its customers and they say on behalf of Judge Kleinfeld we protest, I didn't tell them they could protest on my behalf. I didn't have any protests. I was fine with it. And they can't speak for me unless I authorize them. Well, but working Washington here had all the earmarks of a representative. I don't know what earmarks means. They didn't have a representation election under the NLRB. Well, under the Railway Labor Act, you mean. No, no, I mean they're not a union representing the employees. You get green cards and then you have a vote. But to be a representative, you don't need to be a labor organization. That was my point. You could be a working Washington. And what do you cite for that? The definition of representative in the Railway Labor Act. Okay, but help me with this. I thought that the Railway Labor Act provided that you had to have, in order to be a, I'm using probably the incorrect word, but a labor representative, you have to have an election and at least 50 percent of the people had to basically agree that you're representing them. So basically they have to be the union and represent you. It's just not willy-nilly. What am I missing here? Okay, a couple things. First of all, you can be voluntarily recognized and not go through the election process. And what do you cite for that? The summit case talks about that, the history of that. Summit case? Summit case from the Second Circuit that we rely on in our pleadings, Your Honor. And I can tell you ASIG has that kind of representation at other locations. It has voluntarily recognized unions. And there's other cases I don't have. Have you recognized Working Washington? We have not. Okay. And if you did, would that solve the problem? It wouldn't change them to a union. I understand that, but I mean for purposes of solving your problem, part of what I'm dealing with is it seems to me you had people like trains, so to speak, in the night passing each other. The statute does not neatly fit together. You're saying that they are a labor representative. Exactly. If they're voluntarily recognized and summit says there's a procedure you go through, you don't recognize them. Right. So they're free to come to us. They're free to come to us. An individual can come to us. And they have. And they have. And you said drop dead. This is where we differ. Once we do that, they don't have the right to strike over that. Okay. If they want to have the right to strike, well, if they want to be represented, they have to go through the NMB process. I don't know if they do. They don't want to be a union. As summit airlines differed in that it says the district court found that a primary purpose of the activities was to force summit to recognize Local 851 as the collective bargaining representative of the JFK employees. Right. It's more like Wheeling. That's different from here. It's more like Wheeling where at the point in time that the Fourth Circuit issued its affirmance of the preliminary injunction, the union said we don't want to represent these people. We just want to negotiate over how they get hired and how they get hired with their seniority intact. And the Fourth Circuit said you can't do that unless you're their representative. Okay. So then I get back to the issue then. I look at those two cases the same way, that they really don't solve the problem here because you've got some people who want to get something done. You don't recognize them. So they don't fit neatly into the major-minor disputes and so on because they're not an official labor representative. So if you don't recognize them, what is there in the RLA that requires them to do anything before they exercise a right to strike? The structure and purpose of the act. But you're talking about policy, right? No, I'm talking about the purpose of the act and how it's structured and these three categories of disputes that were created. Okay. So it's not major, it's not minor because they're not labor. They specifically talk about labor unions. Okay. So on the third category, how do you fit them in the third category? Because by coming to them, whether it's Working Washington, whether it's a group of employees, whether it's an individual employee, and purporting to speak on behalf of a group, that person is acting as a small case R representative. Let me ask you if that purpose of the act strikes me as expandable or contractable depending on what you want to do with it. It's kind of vague for me. I'm thinking one way to look at the purpose of the act in a narrower way is it's to prohibit unions from striking essential transportation facilities without going through quite a lot of procedure before they do. But that's all it speaks to. Suppose that the Seattle airport was about to shut down because Houston opened a new airport or maybe Kuwait opened a new airport, and they're offering two or three times the wages. So all the employees in Seattle went to Houston or Kuwait, and it shut down the airport. I don't think the Railway Labor Act would speak to that. I'd agree with you. Why isn't this case more like the second, everybody just deciding not to come to work, than the first, the union shutting down the airport? Because you have employees banding together in a concerted fashion in order to try to affect their wages and conditions of employment. And you can try to do it, and it's up to the company whether or not they deal with you, because you're not certified by the NMB, and you haven't been voluntarily recognized. So the company can deal with any sort of grump group like that, but it doesn't have to. But then you can't strike if they don't, because the obligation... That's the problem, because you're assuming something, at least I need some help with it. You're saying that you don't recognize them. They're employees under the RLA. But from my perspective, I'm wondering what duties they have, other than the policy. I get the policy point, what the duties are. I ask your opposing counsel what specifically they need to do from their perspective, what conditions precedent, if you will, they have to satisfy before they have the right to strike. They didn't think any, but the district court raised the question. They went to the mediation board. The mediation board says, hey, you know, we're not going to talk to you because you're not a union. From the employer's perspective, what, if anything, do they have to do specifically in order to have the right to strike? They would have to get a representative and go through the major dispute processes. Okay. Now, that portion of the RLA, by my lights, specifically requires it to be a labor union, specifically. I don't get this rump group deal at all with major stuff. Humor me just for a second. Let's assume that it doesn't qualify as a major dispute and it doesn't qualify as a minor dispute. What other than that would they have to do? Well, you can't strike on behalf of either a minor dispute or a representation dispute. The only way you can strike is in the context of a major dispute. Okay. So I guess my point is, if I can't find anything in the Railway Labor Act that they have to do as an unrepresented group, then my question is, is the fallback the Norris LaGuardia Act? It says the district court has no jurisdiction. Now, they made that point. The district court rejected it. But the bottom line is, you're not going to recognize them. They're not a labor union. They don't want to be a labor union, so we've got this hybrid situation here. So if the RLA doesn't apply, then I suppose then we go back to the jurisdictional issue, right? Well, I'd agree that if you don't find a violation of the Railway Labor Act, then the Norris LaGuardia Act would apply. For the RLA to apply here, do you need under Section 151-6 a representative? For the RLA to apply, no. There are different sections of the RLA apply regardless of whether you have a representative. But, for example, again, I'm sorry, go ahead. Which words apply without a representative? Sections 2-3rd, 2-4th, for example. 2-4th was the one that Mr. Dean cited that was at issue in Burke v. Compania, which gives individual employees the right to bring an action claiming that they were discriminated against because of their support for organization. Well, let's see. 4th says employees can organize and bargain collectively through representatives of their own choosing. We don't have that here. Do we? Well, they allege that Mr. Popescu's suspension violated that. They, I think the antecedent of they is not the employees. I think the antecedent is Working Washington, some advocacy group that has never been duly designated as a representative. Well, the defendants in their briefs argued that was what they meant to say. But that's Working Washington. And Alex Popescu and Jonathan Rosenblum and John Doe's 133. Rosenblum is a lawyer representing Working Washington, the advocacy group.  I don't know if he's an attorney. And Popescu is a particular employee with a beef, but he's not trying to organize and bargain collectively through a representative as far as I can tell. Well, he is. He's trying to organize them. That's what all their papers. But they don't have a duly authorized representative. Right, but he's trying to do that. A representation is broader than actually filing with the NMB or having an election. But he isn't trying to get Working Washington to be their union. Well, it may not be Working Washington, but it may be somebody else that's working with Working Washington. That's why we had the Teamsters in there originally. They were dismissed. Well, we don't know that. Well, the record is not complete yet. The closest thing we've come to that is the Teamsters, and they're out of it. Well, that's correct. But, again, the way they were acting is as a representative would, as far as gathering the employees together, talking about strategy, advising them on when to strike, advising them on what the strike could be for. That strike, to me, is representation where the representative, the agent rather than the principal, is deciding who shall be the representative. And that's the way representation works. The principals decide. The employees decide that the union shall be their representative. That's correct, and that's a major reason why we wouldn't want to deal with them, not knowing if they have the support of a majority of the employees, and a major reason why we didn't deal with them. When they came to us with ultimatums saying, put this gentleman back to work, give in to our other demands, or we're going to strike you. We said, well, we don't know if you represent a majority of our, the wishes of a majority of our employees. You claim to. You claim you have a strike ballot collected from a majority of the employees, but we have no reason to know that, absent an election by the National Mediation Board. So that's why we turn down any rights to or any requests to deal with them on these issues. You're over time. Let me get my colleague. Do you have any questions that you want to ask? I just want to confirm this one more time. Sure. I want to be sure that I understood you correctly, that if there is no violation of the RLA, that Norris LaGuardia says the district court has no jurisdiction to issue an injunction. Is that your point? You agree with that? If there's no dispute resolution process, or the unlawful acts aspect of NLGA has not been triggered, yes, that's correct. Okay. All right. Very good. Thank you. You're over time. We'll give you a minute and maybe a little bit more, and we'll see what happens here. Thank you very much, Robert. I first want to address the point about a collective bargaining representative, because I think we're using the term very casually when it's not casual. And I would direct the court to the Steele versus Louisville and Nashville Railroad case at 323 U.S. 192. Say that again, please. Steele. But what's the site? 323 U.S. 192. And in that, that is the case in which the Supreme Court dealt at some length with the significance of being a collective bargaining representative for labor purposes and charged that representative with fiduciary duties to all the employees, even those who did not agree to be represented, those in the minority, so to speak, in the vote, but would nevertheless be bound by what the court called the quasi-legislative acts of that collective bargaining representative. It is quite beyond, I believe, the normal agency rules, simple agency rules, and the purpose. That's what you need the Wagner Act for, so that even though I don't designate you as my representative, if a majority of people in my unit choose to designate you as my representative, I'm bound by you being my representative. That's what you need the Wagner Act for. And this was a critical in 1934 is when they passed the section 2-4, the 155, or I'm sorry, 152-4 part of the statute that imposed that majority requirement on the designation of a representative. And if you note in the definition of representative in 1-6, they refer to the representative who's been designated by the employees, and then 2-4 required that that representative be designated by a majority of the craft or class. And then you look at the rest of the provisions in the statute, for instance, Section 2-2, which requires conferencing by representatives. We have these careful procedures with an NLRB-supervised election to find out, because it's a serious thing binding people to representation by somebody they may not agree with and to pay dues, union dues, to that representative. It would allow them to be able to do something like strike, which is why the, again, I didn't finish, but I mean it is extremely unusual for individual employees acting in concert to threaten a strike. They have none of the protections. They have the ability to be able to fund it, fight it, litigate about it, protect themselves when they come back with binding arbitration, et cetera. So that horrible. So let me just, to wind up, let's just make certain I can understand this finally here. From your perspective, we understand from a management's perspective, I gather you claim that even though your people are employees under the RLA, you believe you have done everything that is required of you under the RLA. You also believe that having done so, the RLA no longer modifies or controls the Norris-LaGuardia Act, and you claim that the district court has no jurisdiction to issue an injunction. Is that correct? That is correct. Okay. And the one other thing I'd want to do on this issue about the availability of economic weapons, such as a strike, is direct you to the discussion of the legislative history in both the General Committee of Adjustment versus Missouri, Texas, Kansas, or MTK case, and where there's considerable discussion about what happens in those. There's a fair amount that we read, and I had no trouble sleeping last night. Thank you, Your Honor. Thank you all for a very enlightening, helpful discussion. The Court is now in recess, and we thank you. And this case is submitted.
judges: Kleinfeld, Smith, Smith